[Civ. No. 31696. Second Dist., Div. Four. Sept. 19, 1968.]

PACIFIC AUTOMOBILE INSURANCE COMPANY, Plaintiff and Respondent, v. PATRICIA R. LANG, Defendant and Appellant.

Hiram W. Kwan for Defendant and Appellant.

Kinkle, Rodiger, Graf, Dewberry & Spriggs for Plaintiff and Respondent.

COLLINS, J. pro tem.*—This is an action by plaintiff (respondent) Pacific Automobile Insurance Company, a licensed liability insurance carrier in California, against the estate, widow, and sole heir of her coinsured, Kenneth J. Lang, deceased, and the American Arbitration Association.

After issue was joined on a complaint and answer, there was filed a written stipulation of counsel that the action, commenced as one for declaratory relief, should "proceed as an action filed pursuant to Code of Civil Procedure, Section 1285, to-wit: An action to confirm, correct, or vacate an arbitration award [and] [t]hat all pleadings heretofore filed be considered filed" pursuant to the Code of Civil Procedure.[1]

So far as pertinent the facts developed at an arbitration hearing are summarized as follows:

---

[1]At the arbitration hearing it was further stipulated that Patricia R. Lang, individually, and as widow and sole surviving heir of Kenneth Lang, deceased, should be treated as the claimant. She, alone, is the appellant on this appeal.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

On November 5, 1962, plaintiff issued to Kenneth J. Lang and Patricia R. Lang a policy of liability insurance which contained provisions for uninsured motorist coverage pursuant to Insurance Code, section 11580.2.

On September 7, 1963, the Langs were occupants of an automobile insured by plaintiff which was traveling on a two-lane public highway near Saugus, California, when a following automobile tried to overtake and pass the Lang vehicle; in order to avoid a collision Mr. Lang, the operator, turned his vehicle toward the soft right shoulder of the roadway; the automobile then "tumbled" resulting in an accident which caused the death of Mr. Lang and serious injuries to his wife, Patricia. Although Mrs. Lang testified at the hearing that she felt a slight pushing of the rear of the Lang automobile prior to the accident, it became apparent on her cross-examination that she really had no independent recollection of an impact. The only disinterested eyewitness was the operator of an oncoming automobile whose safety was temporarily threatened by the action of the automobile overtaking the Lang vehicle. He was so preoccupied in avoiding a collision that he had no opportunity to see any impact. The operator of the overtaking automobile never stopped and was never identified. The arbitrator concluded that there was no credible evidence of any contact between any of the three automobiles.

The arbitrator's decision and award were adverse to several legal contentions of the plaintiff insurer. The arbitrator found that Mr. Lang, the decedent, was not guilty of contributory negligence and that there had been no physical contact between the Lang vehicle and the overtaking uninsured vehicle. In his written decision the arbitrator concluded that the provisions of the subject insurance policy could not supersede but, of necessity, had to yield to the provisions of the Insurance Code, and the underlying legislative intent. Accordingly, his award allowed $10,000 for the death of Mr. Lang and $7,500 for Patricia Lang's injuries and loss of earnings, less the amounts paid her under the medical coverage provision of the policy. In addition, the expenses of arbitration were assessed against plaintiff insurer.

Plaintiff attacked the award on the ground that the arbitrator acted in excess of his judicial authorization under the law and the subject policy. Section 11580.2, subdivision (b), of the Insurance Code requires, among other things, coverage "with respect to an 'uninsured motor vehicle' whose owner or

operator is unknown: (1) The bodily injury has arisen out of physical contact of such automobile with the insured or with an automobile which the insured is occupying." The policy provides (in Part IV thereof) coverage arising out of the ownership, maintenance or use of an uninsured automobile. It defines an uninsured automobile as "(a) an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, . . . or (c) a hit and run automobile; . . ." It defines a "hit-and-run automobile" as "an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, . . ."

The trial court, relying on the arbitrator's finding that there had been no physical contact between the Lang automobile and the alleged uninsured vehicle, concluded that the arbitrator's award exceeded his scope of jurisdiction in that it went "beyond the lawful agreement of the parties." Accordingly, the court held that the award was without force or effect and granted plaintiff's motion to vacate the award in its entirety. The appeal is from that order.

The arbitration agreement contained in the policy provides as follows:[2] "*Arbitration*: If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators to this Part."

---

[2]The record on appeal did not contain any agreement to arbitrate, although appellant's brief referred to a "standard arbitration clause" as set forth in the policy. At oral argument counsel for the parties stipulated that the policy be made a part of the record on appeal and that there was no separate submission agreement. Thus, the above-quoted "Arbitration" clause is the measure of the arbitrator's powers.

The arbitration provisions of the Insurance Code in effect at the time of the accident, and so far as pertinent here, are as follows: "(e) The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration. The arbitration shall be conducted by a single neutral arbitrator. The provisions of Article 3 (commencing with Section 2016) of Chapter 3 of Title 3 of Part 4 of the Code of Civil Procedure shall be applicable to such determinations, and all rights, remedies, obligations, liabilities and procedures set forth in said Article 3 shall be available to both the insured and the insurer at any time after the accident, both before and after the commencement of arbitration, if any, with the following limitations: [the limitations not being relevant here are omitted]." (Ins. Code, § 11580.2, subd. (e).)

In California the applicable rule is that an arbitrator may make a binding award which a court is required to enforce, even though the award conflicts with substantive law, provided only that the agreement to arbitrate confers such broad authority upon the arbitration tribunal. However, it has been held that "[a]n insurance clause which repeats the language of subdivision (e) of section 11580.2 without material change requires arbitration solely of the issues relating to the liability of the uninsured motorist to the insured, and it excludes therefrom the determination of the amount of money which the insurance company must pay to its insured and likewise excludes the preliminary question whether there is a valid and subsisting agreement to arbitrate. (*Commercial Ins. Co. of Newark, N. J.* v. *Copeland* (1967) 248 Cal.App.2d 561, 564-565 [56 Cal.Rptr. 794]; cf. *Aetna Cas. & Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d 333, 337 [143 Cal. Rptr. 476]; *Pacific Indem. Co.* v. *Superior Court* (1966) 246 Cal.App.2d 63, 67-68 [54 Cal.Rptr. 470].)" (*Farmers Ins. Exchange* v. *Ruiz,* 250 Cal.App.2d 741 at pp. 744-745 [59 Cal.Rptr. 13].)

In the *Ruiz* case the arbitration clause, like the instant one, in addition to incorporating the statutory requirements, provided for arbitration of the amount of money payable in case the parties did not agree. The court held that this enlargement did not render arbitrable the question whether the claimant was an insured, and that the trial court properly withheld that issue from arbitration.

■ The question here is whether or not the arbitration clause contained in the subject policy is virtually absolute, as the insured insists, or is restrictive and limited as the insurer contends,[3] and, if the latter, did the arbitrator have jurisdiction to make an award in case there was no physical contact of the character contemplated by the statute.

In her opening brief the insured asserts that the arbitration clause of the subject policy "is couched in general terms with no limitations as to the arbitable [sic] issues," and that the "physical contact" qualification of both the statute and the policy may be ignored. We do not agree that the insured's position is a fair or reasonable interpretation of the arbitration clause. The clause specifically articulates any contemplated arbitration to a claim for damages recoverable from *"the owner or operator of an uninsured automobile."* (Italics supplied.) Mindful that the arbitration clause is lodged in the same "Part" of the insurance policy (i.e., Part IV) which contains the definitions of "uninsured automobile," and "hit-and-run automobile,"—and to which "Part" alone the arbitration provisions relate,—we conclude that the intendment of the clause was to authorize arbitration in consonance with its definitive terms. The definition of "hit-and-run driver" specifies "physical contact" with the insured or the insured's automobile as one of its ingredients. This provision, in turn, comports with the condition for liability which section 11580.2 of the Insurance Code postulates. When the statute and the policy are thus juxtaposed, they compel the conclusion that here is an agreement to arbitrate which is not broad and unlimited, but rather is quite limited in scope.

Nevertheless, for reasons presently stated we must vacate the order below.

■ It appears from the record that when the matter came before the trial court, pursuant to the stipulation of counsel, the court did not receive evidence and make an independent judicial determination as to whether or not the insured automobile had any physical contact with the phantom automobile. A judicial determination of this factual issue necessarily must precede determination of the issue of law whether the arbi-

---

[3]Appellant's brief and some appellate court decisions characterize as "general," arbitration agreements of varying degrees of comprehension. (See e.g., *Interinsurance Exchange* v. *Bailes,* 219 Cal.App.2d 830 at p. 834 [33 Cal.Rptr. 533].) We eschew the expression as not being really definitive. Actually each agreement must be evaluated on the basis of its own language and context.

trator has jurisdiction to proceed. But here the trial court accepted the arbitrator's determination of the factual issue and rested thereon its own determination of the issue of law. This was error.

Accordingly, we vacate the order and remand the matter to the trial court with directions to receive evidence and determine the issue of the arbitrator's jurisdiction consonant with the legal principles expressed herein.

Files, P. J., and Jefferson, J., concurred.