[Civ. No. 10340. Fourth Dist., Div. One. Apr. 20, 1971.]

FREDERICK KRYCH, Plaintiff and Appellant, v.
MERCURY CASUALTY COMPANY, Defendant and Respondent.

**COUNSEL**

Tyson & Churchill and William T. Tyson for Plaintiff and Appellant.

Welsh, Gibson & Legro, Stanley W. Legro and Paul R. Kennerson for Defendant and Respondent.

**OPINION**

**WHELAN, J.**—The fundamental issue on appeal is the legislative intent when in 1961 the Legislature altered the uninsured motorist insurance

provision of the Insurance Code by inserting in Insurance Code section 11580.2 as a part of the definition of an uninsured motor vehicle a requirement: ". . . that, with respect to an 'uninsured motor vehicle' whose owner or operator is unknown: (1) the bodily injury has arisen out of physical contact of such automobile with the insured or with an automobile which the insured is occupying."

It is plaintiff's claim that the requirement of physical contact was met by the emission of light from the high-beam headlights of an automobile coming toward the vehicle in which plaintiff was a passenger, whose driver, blinded by such lights, drove off the road into a telephone pole at 1:40 a.m. on a Sunday morning.[1]

Plaintiff's theory, presented by way of an amended complaint, was met by a general demurrer. The demurrer was sustained, plaintiff declared his intention not to amend, and for that reason the order stated the demurrer was sustained without leave to amend. Judgment of dismissal followed.

The complaint sought declaratory relief. Plaintiff states correctly that it was technical error for the trial court not to declare the rights of the parties even though adversely to plaintiff. (*Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]; *Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747].) At the same time, plaintiff waives the error and asks that this court pass upon the merits of his contention, as the trial court did. In support of that position he cites *Anderson* v. *Stansbury,* 38 Cal.2d 707, 717 [242 P.2d 305]; *Essick* v. *City of Los Angeles,* 34 Cal.2d 614, 624 [213 P.2d 492]; *Haley* v. *L. A. County Flood Control Dist.,* 172 Cal.App.2d 285, 292-294 [342 P.2d 476].

He also waives by implication any claim the trial court should have declared that the question whether the unidentified car was an uninsured motor vehicle should first have been passed upon by an arbitrator. (See *Esparza* v. *State Farm Mut. Auto Ins. Co.,* 257 Cal.App.2d 496 [65 Cal.Rptr. 245].)

Concerning the light beams emitted by the unidentified vehicle, the complaint variously alleged: "Said high-beam headlights emit high-energy photons of high intensity, occupying space and travel. [*sic*] with a known speed [causing] said photons and high-intensity laser-type beams to strike the automobile. . . . Said high-beam headlights proximately resulted in

---

[1] The exact hour is unimportant so long as it was in the hours of darkness. For some reason the complaint mentions "the late evening hours"; a part of the record on appeal is a copy of a report showing 1:40 a.m. as the time of the happening.

an anatomical reaction in the retina and eye of the insured in the form of a lesion, producing temporary scarring and blindness."

Plaintiff asserts: "[T]he question of physical contact in the instant case is inherently factual and, in this particular context, eminently scientific. It is not one which can be cavalierly dispatched as a matter of law. By rejecting plaintiff's allegations of physical contact out of hand and refusing to hear testimony on the issue, the Court unwittingly foreclosed itself from the only authoritative means of resolving the question."

If the question is indeed one of fact, it would be for the arbitrator, not for the trial court, to make the original determination. Plaintiff's complaint, however, asked that the trial court make that initial determination.

In *Pacific Automobile Ins. Co.* v. *Lang,* 265 Cal.App.2d 837 [71 Cal. Rptr. 637], an arbitrator had found there was no physical contact between the insured car and an unidentified car, but nevertheless interpreted the policy to permit an award under its uninsured motorist provisions. There was in fact some evidence of a pushing of the insured car from behind. The Court of Appeal held the arbitrator would have been without jurisdiction to make an award if there had been no physical contact, but that for the trial court to have held the arbitrator was without jurisdiction the trial court should have made an independent determination whether there was physical contact.

Based upon the matters alleged in the complaint before us, it is possible to declare whether the language employed by the Legislature is satisfied by the communication of light rays from one car to another car and its driver.

Plaintiff's theory is not too firmly fixed as to whether he considers the photons to be a physical extension of the unidentified automobile, or to be objects set in motion by the unidentified automobile.

He cites *Inter-Insurance Exchange* v. *Lopez,* 238 Cal.App.2d 441, 446 [47 Cal.Rptr. 834], which held: "[A] direct application of force, as by Car X striking Car B and forcing it to hit Car C, qualifies as physical contact within the meaning of the statute."

We should not attempt to anticipate the possible future extensions of the sound holding in *Pacific Automobile Ins. Co.* v. *Lang, supra,* 265 Cal. App.2d 837, that if the driver of an uninsured motor vehicle by direct action causes a second vehicle to have physical contact with a third vehicle that constitutes physical contact between the first and third vehicles within the meaning of the statute.

Nor should we hypothesize types of action on the part of an uninsured motorist, involving the physical transmission of sound or the movement of air, that might cause another motorist to lose control of his vehicle without there having been physical contact.

We need not exclude from the field of the probable development of decisional law a recognition that light of an intensity sufficient to penetrate solid matter could be a destructive instrument or weapon when controlled by a negligent or ill-intentioned person.

What the Legislature meant by what it said must be determined from the language used in relation to the subject matter and not from speculation as to what was in the minds of the individual legislators. If it were the latter, we might easily say that it was furthest from their minds that the play of rays from the headlights upon a car or a person constituted physical contact.

Contact means "A union or junction of bodies; a touching or meeting . . ." (Webster's New Internat. Dict. (2d ed.))

While the laser[2] has been a development of recent origin, the problem of the effect of light on the vision of a motorist was well understood when the language under discussion was added in 1961. Measures to control the use of high-beam headlights were enacted as early as 1935 and have since been a part of the Vehicle Code continuously.

■ In view of that legislative background, we think it clear that the words "physical contact" were not intended to describe the reception by a vehicle or by an occupant of a vehicle of light emitted, projected or diffused from the headlights of another vehicle, but to describe a meeting of three-dimensional masses of material having weight, density and bulk, with dimensions perceptible to the normal naked eye.

Such is the meaning attributed by *Page* v. *Insurance Co. of North America,* 3 Cal.App.3d 121, 130, 131 [83 Cal.Rptr. 44]; *Page* v. *Insurance Co. of North America,* 256 Cal.App.2d 374 [64 Cal.Rptr. 89]; *Inter-Insurance Exchange* v. *Lopez, supra,* 238 Cal.App.2d 441.

■ Plaintiff argues additionally that there is a denial of the equal protection of the laws in the requirement that an unidentified vehicle be considered uninsured only if there has been physical contact between it and the claimant or the insured vehicle; that a non-negligent operator may be involved in an accident caused by the negligence of another operator

---

[2]A word as used in the physics of light made up of the first letters of certain words: l[ight] a[mplification by] s[timulated] e[mission of] r[adiation]. (Random House Dict. (1968).)

without there having been an actual collision with any other vehicle, and should be entitled to equal insurance protection as one whose car has been in collision with another vehicle.

A few other states besides California have imposed the physical contact clause by statute. In such states the purpose of the requirement has been said to reduce the possibility that a motorist who loses control of his vehicle through his own negligence will be able to recover under the uninsured motorist coverage by alleging that an unknown vehicle caused the injuries complained of. (*Inter-Insurance Exchange* v. *Lopez, supra,* 238 Cal.App.2d 441; *Page* v. *Insurance Co. of North America, supra,* 256 Cal.App.2d 374; *Motor Vehicle Acc. Indem. Corp.* v. *Eisenberg,* 18 N.Y.2d 1 [271 N.Y.S.2d 641, 218 N.E.2d 524]; *Coker* v. *Nationwide Insurance Company,* 251 S.C. 175 [161 S.E.2d 175]; 25 A.L.R.3d § 3 [a], p. 1303.)

In certain states where the statute making uninsured motorist insurance mandatory did not itself impose the physical contact requirement, such a proviso in the uninsured motorist section of an insurance policy has been held valid for the same reason given for the adoption of a statutory requirement. (See cases collected in 25 A.L.R.3d 1306.)

The stated reason for such a requirement furnishes a reasonable ground of classification; the requirement bears a reasonable relationship to the objective it seeks to promote. When that is true, the constitutional demand for the equal protection of the laws is satisfied. (*Rinaldi* v. *Yeager,* 384 U.S. 305 [16 L.Ed.2d 577, 86 S.Ct. 1497].)

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.